## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

SEIDAH VAUGHN,                              )
                                           )
                    Plaintiff,             )
v.                                         )               NO. CIV-14-0262-HE
                                           )
                                           )
JERAMIE L. BYRD, *et al.,*                  )
                                           )
                    Defendants.            )

## ORDER

Plaintiff Seidah Vaughn filed this action under 42 U.S.C. §§ 1983 and 1985 against Dallas County, Texas, Dallas County Detention Center, the City of Cedar Hill ("City"), Texas and three Cedar Hill police department employees, Detective Jeramie L. Byrd, Lieutenant Stephen K. Lafferty, and Chief of Police Steven Rhodes. Plaintiff asserts violations of various constitutional rights, essentially claiming she was falsely arrested and wrongfully detained for a murder in Cedar Hill, Texas. Detective Byrd was the lead investigator on the case and Lieutenant Lafferty assisted him in the investigation.

The court previously dismissed plaintiff's claims against Dallas County without prejudice and her claims against Dallas County Detention Center with prejudice. Doc. #66. Although summons was issued against the City of Cedar Hill, it was never served. The remaining defendants, Byrd, Lafferty and Rhodes, have filed a motion for a summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence,

construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). Having considered the submissions of the parties in light of this standard, the court concludes defendants' motion should be granted.[1]

Background[2]

At approximately 2:24 a.m. on February 29, 2008, Cedar Hill police officers responded to a 911 call. When they arrived, dispatch informed them that a female (plaintiff) had called 911, stating that someone was inside the house and that someone had been shot in the head. Judith (Judy) Bell was the individual who had been shot. She was taken to the hospital and died around 3:30 a.m. Plaintiff was in the room with Judith Bell when she was shot. When questioned by officers at the scene and then afterwards, plaintiff claimed she was lying in bed beside Judith[3] and heard someone swearing. She stated she saw an intruder, a black male, standing over Judith, swearing at her. She said she put her head under her pillow

---

[1]*Page references for briefs and exhibits are to the CM/ECF document and page number.*

[2]*Defendants' brief consists of a statement of 28 undisputed material facts followed by a Statement of the Case, which provides the background for plaintiff's claims. Plaintiff did not have to challenge the facts included in the Statement of the Case, and the court has not relied on them in its rulings. However, reference to some of those facts, which are principally taken from the murder Investigation File, is necessary to understand the context in which plaintiff's claims arose. Defendants should have included those facts in their statement of undisputed facts and their failure to do so has made the court's task more difficult.*

[3]*In her brief plaintiff contends that she was unaware that Judith Bell was in bed with her until after the shooting occurred. However, the evidence plaintiff cites does not support her assertion.*

and heard one gunshot.  She claimed the intruder then swore at her (plaintiff), told her he had

accomplices in the house and exited the room through the bathroom door.  Plaintiff stated she

lay in bed, afraid to move from fear that the intruder would return.  Eventually, after hearing

Judith Bell gurgling and stating she had been shot, plaintiff said she retrieved her phone from

her purse, which was next to the bed, and called 911.

Plaintiff initially denied that she was involved in an intimate relationship with Judith

Bell, stating they were just roommates.[4]  On March 2, 2008, she failed a polygraph test when

asked questions related to her involvement in the shooting.[5]  Carla Perry,  a friend of Judith

Bell, told defendant Byrd that, prior to the murder, plaintiff told her she had a gun and stated

that she could murder someone without anyone finding out.[6]  Plaintiff's son, Jalil Jones, who

was in the house the night of the murder, told defendants Byrd and Lafferty that, immediately

---

[4]*Plaintiff disputes this fact, citing her affidavit, in which she does not address the issue, and defendants' Exhibit 2, pp. 8-9 .  The Case Report does reflect that plaintiff initially maintained that she and Judith Bell were roommates and not involved sexually, and that she referred to Ms. Bell as her "sister."  Doc. #82-2, pp. 11, 12.  However, the Report also indicates that plaintiff subsequently "explained that [plaintiff] and Judy had been involved in an intimate relationship and they were partners."  Id. at p. 13.*

[5]*Among the questions plaintiff was asked were: "Did you shoot Judith Bell? Did you shoot Judith Bell that night? Did you participate in any way with the shooting death of Judith Bell?  Doc. #82-2, p. 118.  The individual who administered the polygraph, Sgt. Scorcio, stated that "Based on numerical evaluation of VAUGHNS polygraph charts," it was his opinion that "there [were] significant criteria normally associated with deception at questions pertaining to commission of or participation in the offense."  Id.*

[6]*While plaintiff denies making such statements to Ms. Perry, she does not dispute that police records indicate that Carla Perry reported to the police that plaintiff made those remarks to her.  Doc. #97, p. 4, ¶13.  The Case Report reflects that Ms. Perry's actual statement was that plaintiff told her "if she [plaintiff] wanted to she could go to Oklahoma and kill her ex-husband and no one would know."  Doc. #82-2, p. 15.*

after Judith Bell was shot and before the police arrived, plaintiff Vaughn left the residence to dispose of the gun.[7]  Doc. #82-4.  He also told them that plaintiff committed the murder.[8]

Defendant Byrd testified before a Texas Grand Jury regarding the case against plaintiff for the murder of Judith Bell and, on December 2, 2010, the Grand Jury indicted plaintiff for the murder.  Later the same day, a Dallas County arrest warrant was issued for plaintiff's arrest.  She was subsequently arrested on December 6, 2010, in Oklahoma City with the assistance of the Oklahoma City police and was interviewed at the Oklahoma City Police Department by defendants Byrd and Lafferty.

On December 7, 2010, during an Oklahoma court proceeding, plaintiff signed an extradition waiver.  Doc. #82-2, p. 278.  Although she denies in her brief that she signed the waiver, in her affidavit plaintiff admits signing a piece of paper "that I thought meant I was going back to the Oklahoma County jail to wait for 90 days."[9]  Doc. #97-3, p.1.  On December 7, 2010, plaintiff was remitted to the custody of the Dallas County Detention Center or the Dallas County Jail, which is supervised by the Dallas County Sheriff, not the

---

[7]*Plaintiff does not actually controvert this statement, even though she states that she disputes it.  See Doc. #97, p. 4, ¶15.  The fact that Mr. Jones may have nodded or shook his head or said yes or no in response to a question,  rather than make an affirmative statement, does not mean that Mr. Jones did not make a statement upon which defendants could have relied.*

[8]*Plaintiff disputes this statement, relying on text messages Jalil Jones allegedly sent her, which she claims show he was being coerced by defendants.  The text messages, Doc. #97-5, which defendants challenge as unauthenticated hearsay, are inadmissible.  Even if considered ,they would not  demonstrate that the statement was not made.  As is discussed subsequently, plaintiff offers no evidence demonstrating that Mr. Jones's statement was involuntary.*

[9]*The dispute is immaterial for purposes of defendants' motion. As plaintiff notes in her brief, neither defendant Byrd nor defendant Lafferty participated in the extradition proceedings, so all they would have been aware of was that she had signed the waiver.*

Cedar Hill Police Department. After December 7, 2010, none of the defendants had any further involvement with plaintiff, her detention or her criminal case.[10] The criminal case against plaintiff was dismissed without prejudice on March 16, 2012, "upon review of all of the known facts associated with this case." Doc. #82-9, p. 318. Plaintiff filed this action on March 14, 2014.

Plaintiff admits that defendant Rhodes, the Cedar Hill Chief of Police, did not "physically participate[]" in her arrest, extradition, or incarceration. However, she asserts that defendants Byrd and Lafferty were acting on his behalf and pursuant to procedural standards he "set forth" and "authorized through his subordinates." Doc. #97, p. 1.

Claims

In her First Amended Complaint, plaintiff asserts eight claims. In Claim I plaintiff lists four of the claims she subsequently alleges separately. She claims violations under §1983 of her Fourth Amendment right to be free from unreasonable searches and seizures, her Sixth Amendment right to assistance of counsel, her Fourteenth Amendment right to receive due process prior to being deprived of liberty and her Eighth Amendment right to be free from cruel and unusual punishment. In Claim II plaintiff asserts a § 1983 malicious prosecution claim against the City and defendants Rhodes, Byrd and Lafferty. In Claim III she asserts a § 1983 false arrest claim against the City and defendants Rhodes, Byrd and

_____

[10]*The fact that plaintiff "remains the primary suspect in an open murder investigation," Doc. #97, p. 6, does not controvert defendants' factual statement that their involvement with her ended as of December 7, 2010.*

Lafferty. In Claim IV she asserts a § 1983 denial of counsel claim against defendants Byrd and Lafferty. In Claim V she asserts a § 1985 conspiracy claim against the City and defendants Rhodes, Byrd and Lafferty. In Claim VI she asserts a § 1983 false imprisonment claim against defendants Byrd and Lafferty. In Claim VII(A)[11] she asserts a § 1983 claim against the City and defendant Rhodes for failing to implement appropriate policies, customs and practices regarding arrests, investigations and detentions. In Claim VII(B) she asserts a § 1983 cruel and unusual punishment/deprivation of due process claim against Dallas County and Dallas County Detention Center, and in Claim VIII she asserts a § 1983 intentional infliction of emotional distress claim against all defendants.

Because the court has dismissed plaintiff's claims against Dallas County and Dallas County Detention Center, plaintiff's cruel and unusual punishment/due process claim in Claim VII(B), has been dismissed and will not be addressed.

Analysis

Defendants initially argue that plaintiff's official capacity claims should be dismissed because claims for damages against a state official in his official capacity are in effect a suit against the State and are barred by the Eleventh Amendment. Defendants are correct that an official capacity suit is simply "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978).

---

[11]Plaintiff's First Amended Complaint includes two Claim VII's. The court refers to the first, plaintiff's failure to implement policies and customs claim, as Claim VII(A), and the second, plaintiff's cruel and unusual punishment/due process claim, as Claim VII(B).

However, because defendants are municipal employees, rather than state employees, the Eleventh Amendment does not bar plaintiffs' official capacity claims. Her failure to serve the City properly does, though, bar her official capacity claims against the individual defendants. Plaintiff's claims against defendants Byrd, Lafferty and Rhodes in their official capacities will be dismissed.

Defendants next assert that they are entitled to qualified immunity with respect to plaintiff's claims asserted against them in their individual capacities. The qualified immunity "defense shields government officials performing discretionary functions from liability if their conduct does not violate clearly established rights of which a reasonable government official would have known." Green v. Post, 574 F.3d 1294, 1299 (10th Cir. 2009) (internal quotation marks omitted). The plaintiff has "'the burden of showing both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation.'" Id. at 1300 (quoting Williams v. Berney, 519 F.3d 1216, 1220 (10th Cir.2008)).

Defendants maintain that plaintiff cannot show the violation of a constitutional right. They argue that the existence of probable cause defeats plaintiff's malicious prosecution, false arrest, and false imprisonment claims, as well as what defendants refer to as the "derivative-style" claims of conspiracy, failure to implement appropriate policies and intentional infliction of emotional distress, asserted in Claims V, VII(A) and VIII, as well as the general allegations asserted in Claim I. Probable cause is established, they contend, not only by the issuance of the indictment and arrest warrant, but also by the facts detailed in

their statement of undisputed facts.[12]   Particularly damning, defendants assert, is the videotaped interview of plaintiff's son, during which he states that plaintiff committed the murder and afterwards disposed of the weapon.  Doc. #82-4.

Probable cause is required to "initiate a search, arrest and prosecution under the Fourth Amendment."  Stonecipher v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014), *cert. denied*, 135 S.Ct. 881 (2014).  "Probable cause is not a precise quantum of evidence," *id.*, but requires that a "substantial probability existed that the suspect committed the crime."  *Id.* (internal quotation marks omitted).  Something more than a bare suspicion is needed, *id.*, but evidence sufficient to convict is not required.  United States v. Martin, 613 F.3d 1295, 1302 (10th Cir. 2010).  The court determines, "[i]n the context of a qualified immunity defense on an unlawful . . . arrest claim," whether "arguable probable cause" existed for the challenged conduct.  Stonecipher, 759 F.3d at 1141 (internal quotation marks omitted).  "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."  *Id.*  If a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff, then a defendant is entitled to qualified immunity.  *Id.*

"It has long since been settled by the Supreme Court that 'an indictment, "fair upon its face," returned by a "properly constituted grand jury," conclusively determines the

---

[12]*Defendants also state that probable cause is "amply supported by the facts" which are "summarize[d], in narrative form, in the Statement of the Case . . . ."  Doc. #81, p. 24.  However, as the court noted previously, many of those facts were not included in defendants' statement of undisputed facts, so plaintiff was not required to respond to them.  The court therefore has not considered them in addressing defendants' motion.*

existence of probable cause.'" Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012)

(quoting Gerstein v. Pugh, 420 U.S. 103, 117 n. 19 (1975)). *Accord* United States v. Nunez,

668 F.2d 1116, 1125-26 (10th Cir. 1981); D'Addabbo v. United States, 316 Fed. Appx. 722,

at *4 (10th Cir. 2008). Courts have determined, though, that notwithstanding the conclusive

effect of an indictment, "a grand jury's decision to indict . . . will [not] shield a police officer

who deliberately supplied misleading information that influenced the decision." Durham,

690 F.3d at 189 (internal quotation marks omitted).[13]

Here, plaintiff offers no evidence that misleading, false or fraudulent information was

presented to the Texas Grand Jury. She states that she "has not been allowed the opportunity

to depose Defendant Byrd with regard to what transpired with the Grand Jury," Doc. #97, p.

7, and has been unable to explore whether defendant Byrd testified about semen found in

Judith Bell's mouth and vagina or hair found in her pubic area. *Id.* at pp. 7-8. However,

plaintiff failed to file the required affidavit or declaration stating that she needed additional

time to take discovery. *See* Fed.R.Civ.P. 56(d). She also states that other questions remain,

such as whether her son's statements were his own or were coerced, yet she again offers no

---

[13]*Other courts have held that a grand jury indictment creates a presumption of probable cause, but one that "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Manganiello v. City of New York, 612 F.3d 149, 162 (2nd Cir. 2010) (internal quotation marks omitted). The results are the same, whether the indictment is considered to conclusively determine probable cause or only create a presumption of probable cause because, in both situations, if fraud or false testimony was used to procure the indictment, then it will not be sufficient to show probable cause.*

admissible evidence – no deposition testimony or affidavits – to substantiate her assertions.[14]

In the absence of any proof that the indictment was procured by the suppression of material evidence or other bad faith police conduct, *see* Manganiello v. City of New York, 612 F.3d 149, 162 (2nd Cir. 2010); *see generally* Stonecipher, 759 F.3d at 1142 (discussion of burden on plaintiff when claiming an officer failed to disclose material facts to magistrate judge who issued a warrant), the court concludes it establishes that probable cause existed for plaintiff's arrest and detention.[15] *See* Durham, 690 F.3d at 188-90; *see generally* Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996) (concluding "false and embellished testimony" was not "material to the grand jury's probable cause determination").[16]

Even in the absence of the indictment and arrest warrant issued in conjunction with it, the court concludes that probable cause for the arrest of plaintiff existed under the totality of the circumstances. Plaintiff claimed an unknown male assailant managed to gain entry

---

[14]*The unauthenticated text messages attached to plaintiff's brief, to which defendants object, are inadmissible hearsay. Even if they were considered, they are insufficient to negate the court's determination that defendants Byrd and Lafferty had "arguable probable cause" to arrest and detain plaintiff. See Doc. Nos. 82-4, 97-5*

[15]*"A prosecutor's decision not to proceed to trial where proof beyond a reasonable doubt is required does not necessarily prove that a prior indictment lacked probable cause." Kerns v. Bader, 663 F.3d 1173, 1190 n.6 (10th Cir. 2011).*

[16]*In their reply brief, defendants address plaintiff's concern regarding the omission of testimony regarding the hair and semen. They assert that in such circumstances the court considers whether the grand jury would still have found probable cause if the omitted information had not been excluded, citing Kerns. v. Bader, 663 F.3d 1173, 1188 (10th Cir. 2011). As explained by defendants, who rely on the forensics report, Doc. #82-2, p. 99, which plaintiff cited in her affidavit, Doc. #97-3, p. 2, while an enzyme suggestive of seminal fluid was detected on two swabs taken from Ms. Bell, no sperm cells were observed and the pubic hair was determined to have unknown evidentiary value. The court concludes that, assuming such evidence was not presented to the Grand Jury, if it had been, its consideration would not have negated a finding of probable cause.*

into a secure house, appeared in the bedroom she shared with Judith Bell, started swearing at Ms. Bell for unknown reasons, shot her, while leaving plaintiff, an eyewitness, unharmed, and then somehow exited the house, so that when the police arrived the doors were locked from the inside and there was no sign the shooter exited through a window. Those facts, combined with the statement from plaintiff's son that plaintiff had shot Judith Bell and disposed of the gun, constitutes sufficient evidence to demonstrate a "substantial probability existed" that plaintiff murdered Judith Bell. Stonecipher, 759 F.3d at 1141; *see* Kerns v. Bader, 663 F.3d 1173, 1187-90 (10th Cir. 2011).

Plaintiff does not dispute that she has to establish that her arrest and detention were without probable cause to prove her malicious prosecution, false arrest, and false imprisonment claims.[17] *See* Kerns, 663 F.3d at 1187. She also does not dispute that the failure of those claims would preclude her from prevailing on her conspiracy, failure to implement appropriate policies [18] and intentional infliction of emotional distress claims, as well as the causes of actions referenced in Claim I, with the exception of her denial of counsel claim. Because probable cause existed for plaintiff's arrest and detention, defendants Rhodes, Byrd and Lafferty are entitled to summary judgment on plaintiff's claims

---

[17] *As plaintiff has not shown the deprivation of a constitutional right, the court does not have to determine whether the law was clearly established for purposes of the qualified immunity analysis.*

[18] *If defendants did not falsely arrest, imprison or maliciously prosecute plaintiff, then they also cannot be held liable for conspiring to do so. Similarly, the City cannot be held accountable for faulty policies or training regarding arrest, investigation and detention techniques, when the underlying arrest and detention have been found to have been valid.*

for malicious prosecution (Claim II),[19] false arrest (Claim III), § 1985 conspiracy (Claim V), false imprisonment (Claim VI), failure to implement appropriate policies (Claim VII(A)), intentional infliction of emotional distress (Claim VIII) and the corresponding claims in Claim I.

That leaves plaintiff's claim based on the alleged failure of defendants Byrd and Lafferty to provide her with an attorney when they questioned her at the Oklahoma City Police Department after arresting her.[20] Defendants initially assert plaintiff did not invoke her right to counsel, claiming that her statement that she would "like to" talk to a lawyer or that she would "love to" talk with counsel were not unambiguous enough to constitute a proper invocation of the right. Doc. #81, p. 28. Plaintiff stated during the interview, "I'd like to make a phone call and I'd like to talk to my attorney but I know that I didn't do it." Doc. #82-3.

"[A] 'suspect must unambiguously request counsel.'" United States v. Santistevan, 701 F.3d 1289, 1292 (10th Cir. 2012) (quoting Davis v. United States, 512 U.S. 452, 459 (1994)). It is "'an objective inquiry[;]' a suspect 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" Id. (quoting Davis, 512 U.S. at 459). Plaintiff's statement was sufficient to invoke her right to counsel.

---

[19]Because of this conclusion, a determination of whether, as defendants argue, plaintiff's malicious prosecution claim should be dismissed because plaintiff cannot prove that the criminal proceedings ended in her favor, is unnecessary.

[20]The existence of probable cause does not preclude plaintiff's denial of counsel claim.

Even if plaintiff was denied her right to counsel, defendants argue that her claim fails on the merits because no statements were obtained from her that were used against her at trial. Plaintiff responds that had she been allowed to contact her attorney, as she requested, she might "never have been arrested and taken to Dallas County for a two-year detention in solitary confinement."[21] Doc. #97, p. 10. The court finds it unnecessary to consider the merits of plaintiff's claim because defendants also assert that it, like most of her other claims, is untimely. The court agrees that plaintiff's denial of counsel claim was filed after the limitations period expired.

The limitations period for a §1983 claim is determined by the personal injury statute of limitations in the state in which the claim arose, while federal law governs when the action accrues. McCarty v. Gilchrist, 646 F.3d 1281, 1289 (10th Cir. 2011). In both Oklahoma and Texas the limitations period is two years. Id.; Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (2005). Because "the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." Smith v. City of Enid, 149 F.3d 1151, 1154 (10th Cir.1998) (citations and internal quotation marks omitted). In other words, "the constitutional injury . . . which trigger[ed] the statute of limitations for purposes of § 1983 occurred when [plaintiff was denied counsel], not when the consequence of that constitutional injury ... manifested itself."

_____

[21]Plaintiff had already been arrested at that point. The court notes that, although plaintiff states that the Oklahoma County District Judge told her there was no reason for her to have an attorney during the extradition hearing, the order he signed, which states that plaintiff voluntarily executed the extradition waiver in his presence, also states that he advised plaintiff of her legal rights provided by Oklahoma and cites the Oklahoma Indigent Defense Act, 22 Okla. Stat. § 25.

*Id.*

Plaintiff's evidence is that she was denied counsel on December 6, 2010. Her claim thus arose more than two years prior to the filing of this action on March 14, 2014. Plaintiff contends nonetheless that her claim is not time-barred because of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). "<u>Heck</u> precludes § 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges." <u>Beck v. City of Muskogee Police Dep't</u>, 195 F.3d 553, 557 (10th Cir. 1999).[22] However, "<u>Heck</u> applies only to those claims that would necessarily imply the invalidity of any conviction that might have resulted from prosecution" of the murder charge. *Id.* <u>Heck</u> does not affect plaintiff's denial of counsel claim "because ultimate success on [it] would not necessarily question the validity of a conviction resulting from the [murder] charge . . . ." *Id.* at 558.[23] Plaintiff's denial of counsel claim is barred by the applicable two year statute of limitations.

Plaintiff's intentional infliction of emotional distress claim also is untimely.[24] Defendants' involvement with plaintiff ended on December 7, 2010, when she was transferred to the custody of the Dallas County Detention Center, which is supervised by the

---

[22]*Because the charges against plaintiff were not dismissed until March 16, 2014, and plaintiff filed this lawsuit on March 14, 2014, if* <u>Heck</u> *applies, some of plaintiff's claims would be timely.*

[23]*Plaintiff did not make any incriminating statements during the interrogation.*

[24]*While some of plaintiff's other claims also may be barred by the statute of limitations, because they are precluded on other grounds the court will not consider the more difficult question of* <u>Heck</u>*'s impact on them.*

Dallas County Sheriff, not the Cedar Hill Police Department. None of defendants' conduct, which could be the basis for an intentional infliction of emotional distress claim, occurred less than two years before this lawsuit was filed.[25]

## Conclusion

As the court has concluded that defendants Byrd and Lafferty possessed arguable probable cause to arrest and detain plaintiff, they are entitled to qualified immunity and summary judgment with respect to plaintiff's claims for malicious prosecution, false arrest and false imprisonment. The determination of probable cause also entitles defendant Rhodes to summary judgment on plaintiff's claims for malicious prosecution, false arrest and failure to implement appropriate policies, customs and practices[26] and warrants the entry of summary judgment in favor of defendants Byrd, Lafferty and Rhodes against plaintiff on her conspiracy and intentional infliction of emotional distress claims. As the court has concluded that plaintiff's denial of counsel claim is barred by the applicable two year statute of limitations, defendants Byrd and Lafferty are entitled to summary judgment on that claim. Defendants are entitled to summary judgment on the claims listed in Claim I because they either are precluded due to the existence of probable cause or time-barred. Because the City

---

[25]*Defendants also argue that neither the Supreme Court or Tenth Circuit recognized an intentional infliction of emotional distress claim "as a section 1983 claim under similar circumstances for the relevant time frames." Doc. #81, p. 29. Regardless of whether it can be considered a § 1983 claim or a state law claim falling within the court's supplemental jurisdiction, plaintiff's intentional infliction of emotional distress claim is time-barred.*

[26]*Plaintiff did not assert a claim against defendant Rhodes for false imprisonment. See Doc. #44, p. 8-9, Claim VI.*

of Cedar Hill was never served, all plaintiff's claims asserted against it are dismissed without prejudice and her claims against defendants Byrd, Lafferty and Rhodes in their official capacities are dismissed.  Plaintiff's claims against Dallas County were previously dismissed without prejudice and her claims against Dallas County Detention Center were dismissed with prejudice.

Accordingly, the motion for summary judgment filed by defendants Byrd, Lafferty and Rhodes [Doc. #81] is **GRANTED**.  Plaintiff's claims against the City of Cedar Hill are **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

Dated this 20th day of January, 2016.


_____
JOE HEATON
CHIEF U.S. DISTRICT JUDGE